## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANIL ENTERPRISES, | : | Civil Action No. 07-3688 (NLH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| GETTY PETROLEUM | : |  |
| MARKETING, INC. and | : |  |
| LUKOIL AMERICAS CORPORATION, | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES:**
LISA J. RODRIGUEZ
TRUJILLO, RODRIGUEZ & RICHARDS, LLP
258 KINGS HIGHWAY EAST
HADDONFIELD, NJ 08033
*Attorney for Plaintiff*

HENRY H. JANSSEN
OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP
ONE PENN CENTER
1617 JOHN F. KENNEDY BOULEVARD
19TH FLOOR
PHILADELPHIA , NJ 19103
*Attorney for Defendants*

**HILLMAN, District Judge**

   Before the Court is defendant Getty Petroleum Marketing Inc.'s ("Getty") converted motion for summary judgment.  For the reasons expressed below, Getty's motion is granted.

    **I.**  **BACKGROUND**

   The history of this case was recited at length in this Court's Opinions entered on April 11, 2008 and August 27, 2008 and will not be repeated here.  Rather, a brief summary of the procedural posture of this case will be provided for purposes of

deciding this motion.

Plaintiff, a franchisee operator of a gasoline service station that was converted from a Mobil station to a Lukoil station, filed a three count complaint alleging that the conversion of its station from Mobil to Lukoil was a constructive termination of its franchise agreement violative of the Petroleum Marketing Practices Act ("PMPA") and the New Jersey Franchise Practices Act ("NJFPA"), and that defendants[1] breached their contract under New Jersey law.  Defendants filed a motion to dismiss that was converted into one for summary judgment.[2]   In response to the converted motion for summary judgment, plaintiff did not dispute the dismissal of the three claims plead in its complaint but rather requested leave to file an amended complaint to assert a claim for breach of the implied covenant of good faith and fair dealing on the ground that the breach of implied covenant claim was inadvertently omitted from its complaint.  Defendants opposed amending the complaint on the ground that such amendment would be futile.

The Court continued defendants' motion for summary

---

[1]  On August 27, 2008, the Court granted defendant Lukoil Americas Corporation's motion to dismiss.

[2]  The Court gave notice of the conversion and adjourned it for sixty days to allow plaintiff time to submit its proofs to support its claims and defend itself against defendants' motion. After the expiration of the sixty days, defendants renewed their converted motion for summary judgment.

2

judgment for thirty days, permitting plaintiff two weeks to file its response to defendants' argument that amending the complaint would be futile, and defendants two weeks to respond to plaintiff's submission.[3]  The parties have filed their respective briefs and this matter is now ready for decision.

## II.  **STANDARD**

Under Fed.R.Civ.P. 15(a)(2), the Court should freely grant leave to amend where justice so requires.  See Fed.R.Civ.P. 15(a)(2).  "In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 183 (1962).  The grant or denial of leave to amend is within the discretion of the District Court.  Id. (stating that outright refusal without any justifying reason is an abuse of discretion).

If allowing the complaint to be amended would not cure

---

[3]  Although a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment[,]" Bell v. City of Philadelphia, 275 Fed.Appx. 157, 160 (3d Cir. 2008) (citations omitted), based on plaintiff's representation that it would simply refile its amended complaint because it was not barred from doing so by any statute of limitations, in the interest of judicial economy, the Court permitted the parties to file supplemental briefing on the issue of futility.

the problem with the initial complaint, then amending the
complaint is considered futile.  See Mash v. Township Of Haverford
Dept. Of Codes Enforcement, No. 07-3642, 2008 WL 4748211, at *1
(3d Cir. Oct. 30, 2008); Scruggs v. AIG Personal Lines Claims, No.
08-2071, 2008 WL 4149996, at *1 (3d Cir. Sept. 10, 2008) (finding
District Court did not abuse discretion by denying opportunity to
amend complaint since such an act would have been an exercise in
futility) (citing Grayson v. Mayview State Hosp., 293 F.3d 103,
108 (3d Cir. 2002)).

Here, Getty filed a motion to dismiss that was converted
to a motion for summary judgment.  After a motion for summary
judgment has been filed, it is appropriate to consider the
evidence submitted by the parties in determining whether amending
the complaint would be futile.  See, e.g., Capilli v. Whitesell
Const. Co., No. 04-5777 (JHR), 2006 WL 1722354, at *7 (D.N.J. June
21, 2006) (denying plaintiff's motion to amend made in the
alternative to its opposition to summary judgment because Court
found summary judgment appropriate); Morley v. Philadelphia Police
Dept., No. 03-880, 2004 WL 1527829, at *10 (E.D.Pa. July 7, 2004)
(denying plaintiff's motion to amend in response to summary
judgment motion partly because plaintiff did not prove the absence
of probable cause regarding his malicious prosecution claim); see
Engel v. Minissale, No. 90-4400, 1994 WL 444717, at *2-3 (E.D.Pa.
Aug. 16, 1994) (considering responses to interrogatories and

4

granting motion to amend in response to summary judgment); 27A Fed. Proc., L. Ed. § 62:270 § 62:270 (stating that "[t]he bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate that the proposed amendments are supported by substantial and convincing evidence.").

### III.  **DISCUSSION**

In its proposed amended complaint, plaintiff asserts four factual basis in support of its claim of breach of the duty of good faith and fair dealing: (1) pricing Lukoil fuel at Mobil fuel prices; (2) loss of "Speedpass;" (3) loss of volume; and (4) loss of value.  The loss of "Speedpass" and loss of value arguments were previously addressed and found unavailing by this Court in an earlier Opinion[4] and will not be repeated here.  The

---

[4]    As stated in this Court's August 27, 2008 Opinion, plaintiff's complaint is almost identical to the complaints filed in Akshayraj, Inc. v. Getty Petroleum Marketing, Inc., No. 06-cv-2002 (NLH) and Quick Flow v. Getty Petroleum Marketing, Inc., No. 06-cv-2954 (NLH) (consolidated with Akshayraj).  This Court has already dismissed a portion of plaintiff's argument in support of its breach of the duty of good faith and fair dealing in the Akshayraj cases:

> First, with respect to Plaintiffs' claim that implementing the renaming program was a breach of the implied covenant of good faith and fair dealing, that claim fails because the franchise agreement explicitly allows for rebranding . . . . Second, Plaintiffs' claim that Defendants did not act in good faith in providing services to Plaintiffs fails because it is too vague and does not meet the notice pleading standard required by Fed. R. Civ. P. 8.

Court addresses the two other basis for its claim, pricing and loss of volume.

Plaintiff argues that it should be granted leave to amend to add a claim for breach of the implied duty of good faith and fair dealing because the defendants violated this duty by charging unreasonable dealer tank wagon ("DTW") prices for Lukoil branded gasoline. Plaintiff states that from August 2005 until July 2006, the sales volume at plaintiff's gasoline station was 926,665 gallons but that in the year after conversion of the brand in August 2006, the sales volume dropped by 36,603 gallons to 890,062 gallons. Plaintiff also states that during those same two years its "weighted average margin" dropped from $.087 per gallon to $.0695 per gallon, and its credit card fees rose by over $8,000.00.

Plaintiff also argues that it was injured when it was forced to lower its gasoline price in order to lure former customers back and build loyalty, but had to continue to pay the high wholesale prices charged by defendants. Plaintiffs admit that its gasoline sales volume did increase in certain months after conversion from Mobile to Lukoil, but argue that it only did

_____

(Akshayraj I Opinion at 17.)

    The loss of value argument fails because the franchise agreement specifically permits rebranding and, therefore, there is no claim for loss of value of the Mobil brand. Likewise, franchisees were not entitled to participate in any particular program like "Speedpass" under the franchise agreement.

so in response to plaintiff lowering its price and that its profit margin on each gallon of gas sold also lowered.

Defendants argue that amending the complaint to add a claim for breach of the implied duty of good faith and fair dealing would be futile primarily because the implied covenant between the parties was not broken by Getty and because plaintiff submitted no evidence showing that its volume decreased after rebranding.

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001) (citing Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575 (N.J. 1997); E. Allan Farnsworth, Contracts § 1.5, at 12-14 (1990)). "Unlike many other states, in New Jersey 'a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate.'" Id. (citations omitted). If one party to a contract has discretion to make decisions as to quantity, price, time, or other conditional aspects of a contract, such decisions must be made in good faith. Id. at 1127 (citing Steven J. Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv. L.Rev. 369 (1980)).

In Wilson, the New Jersey Supreme Court fashioned a test "... for determining whether the implied covenant of good

7

faith and fair dealing has been breached as follows:

> [A] party exercising its right to use
> discretion in setting price under a contract
> breaches the duty of good faith and fair
> dealing if that party exercises its
> discretionary authority arbitrarily,
> unreasonably, or capriciously, with the
> objective of preventing the other party from
> receiving its reasonably expected fruits under
> the contract.  Such risks clearly would be
> beyond the expectations of the parties at the
> formation of a contract when parties
> reasonably intend their business relationship
> to be mutually beneficial.  They do not
> reasonably intend that one party would use the
> powers bestowed on it to destroy unilaterally
> the other's expectations without legitimate
> purpose.

Id. at 1130.

The court in Wilson also stressed that the "... test must recognize the mutuality of expectation and enforce a party's contractual right to exercise discretion in setting prices based on its own reasonable beliefs concerning business strategy."  Id. The test does not permit a party to allege bad faith or unfair dealing in the abstract.  Id. (citations omitted).  Objective proof of bad faith is essential because contracting parties are not expected be their "brother's keeper" and it is not a breach of good faith if discretionary decisions happen to result in economic disadvantage.  Id.

Here, plaintiff argues that Getty charged unreasonable DTW prices for Lukoil branded gasoline, and in order to lure former Mobil customers back, plaintiff had to reduce its prices and as a result reduced its profit margin.  It is not in dispute

8

that the contract between the parties contemplated that plaintiff would be charged a wholesale price for fuel sold as Mobil motor fuel that was higher than other supplier's wholesale prices with the expectation that plaintiff would maintain high volumes of gasoline sold.  It is also not disputed that after the station was rebranded to Lukoil that Getty expected plaintiff to continue to maintain "Mobil-like retail prices."  Plaintiff argues the rebranding forced it to "pick its poison" by either increasing sales volume by sacrificing margin, or continue to price an unknown gasoline at Mobil-branded price levels and watch its sales volume plummet.

The difficulty with plaintiff's position is that it lowered its retail price based on its own reasoning that its customers would never pay Mobil fuel prices for Lukoil fuel. Plaintiff does not provide the Court with any facts that could show that its customer base would no longer buy gas at plaintiff's station because of the price charged for Lukoil gas.  Rather, the facts submitted suggest the opposite.  In 2005, the year before rebranding in which only Mobil fuel was sold, the volume of sales was 834,507.  In 2007, the year after rebranding in which only Lukoil fuel was sold, the volume of sales was 886,333.[5]  Plaintiff

---

[5]  The parties criticize each other for picking arbitrary calendar dates to compare sales volume to support their positions.  Rather than selecting certain months within the year to compare, the Court looks at the standard January - December calendar year as the appropriate benchmark.  In comparing the

would argue that the volume only increased because it lowered its price.  Even assuming this is true, plaintiff has not alleged facts that could suggest that it has not been profitable since the rebranding.  Even if the sales profit margin decreased, its sales volume increased.[6]  A higher sales volume, with lower sales profit margin, is often an intentional sales strategy to gain profit.  See Evans v. S. S. Kresge Co., 394 F.Supp. 817, 824 (W.D.Pa. 1975) (stating that K-Mart's plan from its inception, and dependent upon for its success, was high volume sales with a low per item profit margin).

Plaintiff has not alleged any objective facts that could suggest that Getty - by rebranding plaintiff's station from Mobil to Lukoil and continuing to charge the higher wholesale  price for motor fuel - had an objective of preventing plaintiff from receiving its reasonably expected fruits under the contract.  See id.  Rather, the facts as alleged by plaintiff indicate that Getty exercised its discretion for business purposes.  See id.

_____

calendar years, sales increased after rebranding.

[6] Plaintiff's argument that its credit card fees rose by over $8,000.00 does not support its claim of breach of the duty of good faith and fair dealing.  Plaintiff has not alleged any objective facts that could support a finding that defendant acted in bad faith to increase the amount of fees charged by banks who issue credit cards in order to prevent plaintiff from receiving its reasonably expected fruits under the contract  As argued by defendant, credit card fees are charged by the banks who issue the cards and are a percentage of the amount charged.  As gasoline prices increase, so too do credit card fees.

IV.   **CONCLUSION**

For the foregoing reasons, plaintiff's request to amend its complaint to add a claim for breach of the duty of good faith and fair dealing is denied because such amendment would be futile. Accordingly, defendant's converted motion for summary judgment is granted.  An Order consistent with this Opinion will be entered.

<u>  s/ Noel L. Hillman     </u>
NOEL L. HILLMAN, U.S.D.J.

Dated: <u>February 23, 2009</u>

At Camden, New Jersey

11